**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
WILLIAM MULREADY,             :
                              :
     Plaintiff,[1]            :
                              :
v.                            :    Civil No. 3:06CV00934(AWT)
                              :
CAROL MULREADY, STATE OF      :
CONNECTICUT JUDICIAL BRANCH   :
SUPPORT ENFORCEMENT, ATTORNEY :
GENERAL'S OFFICE, LEIGH       :
JULIAN, GEORGE S. SZYDLOWSKI, :
ROBERT A. NAGY,               :
                              :
                              :
     Defendants.              :
                              :
------------------------------x
```

## ORDER OF DISMISSAL RE STATE DEFENDANTS

### I.   BACKGROUND

In their motion to dismiss, all of the defendants except
Carol Mulready and Margaret Hollon (the "State Defendants")
construe the plaintiff's complaint as setting forth claims
pursuant to 42 U.S.C. § 1983, Title II of the Americans with
Disabilities Act (the "ADA"), and Section 504 of the
Rehabilitation Act.  The State Defendants note that the plaintiff
cites to a number of other statutes, but they are uncertain which
statutes the plaintiff intends to rely upon.  The court notes

---

[1] William Mulready also attempted to bring suit on behalf of
his children, Serena Mulready, Britt Mulready, and minor child
K.M., all of whom the court has terminated as plaintiffs.  (See
Order re Defendant Hollon's Supplemental Motion to Dismiss (Doc.
No. 40)).

that the plaintiff, despite twice moving for an extension of time

to respond to this motion,[2] has failed to file an opposition,

although he did file an opposition to defendant Hollon's

Consolidated Motions Under Rule 12 to Dismiss for Lack of

Jurisdiction (12(b)(1)) and for Failure to State a Claim

(12(b)(6)). Thus, the pro se plaintiff clearly understands that

he has the opportunity to file an opposition. For the reasons

set forth below, the defendants' motion to dismiss is being

granted. Because the plaintiff has neglected to file any

opposition whatsoever, the plaintiff is not being given leave to

amend the complaint.

## II. <u>ANALYSIS</u>

### A. **Title II of the ADA Claim**

The plaintiff's Title II ADA claim is being dismissed

because the plaintiff has not alleged that he has a disability

within the meaning of the ADA. Title II of the ADA provides

that "no qualified individual with a disability"[3] shall, by

---

[2] In these motions for extension of time, the plaintiff has
explained that he was doing research and refining his writing.

[3] "Qualified individual with a disability" is defined as "an
individual with a disability who, with or without reasonable
modifications to rules, policies, or practices, the removal of
architectural, communication, or transportation barriers, or the
provision of auxiliary aids and services, meets the essential
eligibility requirements for the receipt of services or the
participation in programs or activities provided by a public
entity." 42 U.S.C. § 12131(2). "Disability" is defined as "a
physical or mental impairment that substantially limits one or
more of the major life activities of such individual." 42 U.S.C.

2

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Even though the plaintiff alleges in his complaint that one of his children has a learning disability, that cannot support an inference that the plaintiff also has a disability. Even accepting as true the plaintiff's genetics argument asserted in state court (i.e. that the child's disorder is hereditary and therefore at least one parent must also have the disorder), the plaintiff could at best show that one of the parents has a learning disability, not that he must have a learning disability. Because the plaintiff has not alleged that he is disabled under the ADA, the court does not address the State Defendants' other arguments with respect to the ADA claim.

**B.    Section 504 of the Rehabilitation Act Claim**

The plaintiff's Section 504 Rehabilitation Act claim is also being dismissed because the plaintiff has not shown that he has a disability within the meaning of the Rehabilitation Act. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability[4] . . . shall, solely by reason of

_____

§ 12102(2)(A).

    [4] "Individual with a disability" is defined as "any individual who-- (i) has a physical or mental impairment which for such individual constitutes or results in a substantial

her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). Because the plaintiff has not alleged that he is disabled within the meaning of that term in the Rehabilitation Act, the court does not address the State Defendants' other arguments with respect to this claim.

### C. Eleventh Amendment Sovereign Immunity

As the State Defendants argue, the remaining claims against the State of Connecticut Judicial Branch, the Judicial Branch Support Enforcement Unit, and the Office of the Attorney General must be dismissed because these entities are protected by Eleventh Amendment sovereign immunity. See Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); Cory v. White, 457 U.S. 85, 91 (1982) ("the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity"); Alabama v. Pugh, 438 U.S. 781, 782 (1978) ("suit against the State and its [agency] is barred by the

---

impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services . . . ." 29 U.S.C. § 705(20).

Eleventh Amendment unless [the State] has consented to the filing of such a suit").  Unless the state has waived its sovereign immunity, or its immunity is validly abrogated by statute, the plaintiff cannot sue the state or its agencies either for monetary damages or injunctive relief.

Moreover, the plaintiff cannot recover monetary damages against defendants Szydlowski, Nagy, and Julian in their official capacities.  See, e.g., Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office"); Goonewardena v. New York, 475 F.Supp.2d 310, 329 (S.D.N.Y. 2007) (sovereign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities").

**D.   Defendant Nagy**

The State Defendants argue that Nagy is not a proper defendant because he was not personally involved in any alleged violation of constitutional rights.  "'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).  However, "[i]t is well settled that a defendant's personal involvement in a constitutional tort is not required in

5

a 1983 action seeking injunctive relief." <u>Voorhees v. Goord, et al.</u>, No. 05 Civ. 1407(KMW)(HBP), 2006 WL 1888638, at *6, n. 1 (S.D.N.Y. Feb. 24, 2006).  Therefore, a suit against Nagy in his official capacity, seeking only injunctive relief, may be permissible.  However, the plaintiff fails to set forth factual allegations that could support including Nagy as a defendant in this action.

### E.  <u>Younger</u> Abstention

The State Defendants, citing to the <u>Younger</u> abstention doctrine, argue that the court should abstain from interfering with ongoing state proceedings, i.e. the court's child support orders and contempt order(s).  <u>Younger</u> abstention places prudential limitations on the federal courts' authority to hear cases where they interfere with pending state litigation.  The Second Circuit stated in <u>Spargo v. N.Y. State Comm'n on Judicial Conduct</u>, 351 F.3d 65, 75 (2d Cir. 2003) that "<u>Younger</u> abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." The court noted that there is an exception to <u>Younger</u> where the plaintiff shows "'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'"  <u>Id.</u> at 75 n. 11 (citation omitted).  <u>See also</u> <u>Williams v. Lambert</u>, 46 F.3d

1275, 1282 (2d Cir. 1995) ("Younger abstention requires that in the absence of bad faith, fraud or irreparable harm, a federal court must abstain from enjoining ongoing state criminal proceedings.").

It appears from the record that child support is an ongoing issue in the state court.  See People United for Children, Inc. v. City of New York, 108 F.Supp.2d 275, 289-90 (S.D.N.Y. 2000) ("numerous courts have found that ongoing Family Court proceedings satisfy the first Younger element").  The documentation attached by the defendants shows that the plaintiff has appealed Judge Brunetti's November 21, 2006 order, in which he affirmed a June 19, 2006 order, where the [plaintiff] was found in contempt and a support order was affirmed.  It also appears from the State Defendants' papers that argument on the plaintiff's motion was scheduled for early 2007.  Proceedings which involve child support "involve family relations which is an important state interest."  Cogswell v. Rodriguez, 304 F.Supp.2d 350, 357 (E.D.N.Y. 2004) (based on new York law).  See also Moore v. Sims, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern.").  In Cogswell, the court found that where the plaintiff brought federal civil rights claims against the hearing examiner, and "she does not deny her ability to raise these claims in state court", "the claims asserted against [hearing examiner] fall squarely within the

7

ambit of the Younger abstention doctrine, as the plaintiff can raise her claims in the context of the pending proceedings in the New York State court system." Cogswell, 304 F.Supp.2d at 357. The court notes that the plaintiff has not pled an inability to assert his claims within the appeals process in the Connecticut court system.[5]

Moreover, the State Defendants also argue that contempt proceedings are subject to Younger abstention. See generally Juidice v. Vail, 430 U.S. 327 (1997). While the court is not aware of the status of any appeal the plaintiff has filed with respect to any order of contempt against him, a proceeding is "ongoing" if appellate review is pending. See New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 374 (1989) (Rehnquist, J., concurring) (noting "prior case law indicating that such proceedings should be regarded as 'ongoing' for the purposes of Younger abstention until state appellate review is completed"); Remigio v. Kelly, No. 04 CIV 1877JGKMHD,

---

[5] At page 4 of the Complaint, the plaintiff states: "held dec[is]ion until after appeal time. Dec. 2004 - Magistrate William Strada." However, it appears from Conn. Gen. Stat. § 46b-231(n), which governs appeals from final decisions of family support magistrates that the time for appeals is "fourteen days after the filing of the final decision . . . ." Conn. Gen. Stat. § 46b-231(n)(2) (emphasis added). The plaintiff also seems to allege that the appellate court retaliated against him when it denied his appeal for failure to file in the superior court, rather than the appellate court. See Conn. Gen. Stat. § 46b-231(n)(2). The statute clearly states where appeals should be filed.

2005 WL 1950138, at * 12 (S.D.N.Y. Aug. 12, 2005) ("'state
proceedings are ongoing until the parties exhaust their state
appellate remedies'") (citation omitted); <u>Levy v. Lerner</u>, 853
F.Supp. 636, 641 (E.D.N.Y. 1994) ("it is settled that for
purposes of <u>Younger</u> abstention, a proceeding is considered
pending until all appellate court remedies have been exhausted").
At least to the extent that appeals are still pending, <u>Younger</u>
abstention bars the plaintiff's claims based on the family
court's finding him in contempt.

### F. <u>Rooker-Feldman</u> Doctrine

The State Defendants also argue that the <u>Rooker-Feldman</u>
doctrine operates to prevent the plaintiff from relitigating in
this court the state court's 2005 finding of contempt and
imposition of a penalty of incarceration.  After the Supreme
Court's decision in <u>Exxon Mobil Corp. v. Saudi Basic Industries
Corp.</u>, 544 U.S. 280 (2005), the Second Circuit interprets the
<u>Rooker-Feldman</u> doctrine to have four requirements:  1) "the
federal-court plaintiff must have lost in state court"; 2) "the
plaintiff must 'complain[] of injuries caused by [a] state-court
judgment[.]'"; 3) "the plaintiff must 'invit[e] district court
review and rejection of [that] judgment[]'"; and 4) "the state-
court judgment must have been 'rendered before the district court
proceedings commenced'".  <u>Hoblock v. Albany County Bd. of
Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005) (citation omitted).

"Under the Rooker-Feldman doctrine, 'lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment.'" Mackenzie v. Donovan, 375 F.Supp.2d 312, 319 (S.D.N.Y. 2005) (citation omitted).  Also, "'even where a state court judgment is not being appealed directly, the District Court is in essence being called upon to review the state court decision where claims presented to a . . . District Court are inextricably intertwined with the state court's determination.'"  Id. at 319 (citations omitted).

> Inextricably intertwined "means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the Rooker-Feldman doctrine if it would be barred under the principles of preclusion."  Moccio v. New York State Office of Court Admin., 95 F.3d 195, 199-200 (2d Cir. 1996).  In other words, "a federal claim is 'inextricably intertwined' with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Bell, 2000 WL 1273637, at *4 (citations omitted).

MacKenzie, 375 F.Supp.2d at 319.  In MacKenzie, the plaintiff, who brought suit against the judge who had entered a contempt order, attorneys, and others, was "effectively asking this Court to review the state court action and rule on the propriety of [the judge's] order."  Id. at 320.  This constitutes "'precisely the sort of action that Rooker-Feldman is designed to prohibit.'" Id. at 320 (citation omitted).  See also Cogswell v. Rodriguez,

10

<u>et al.</u>, 304 F.Supp.2d 350, 356 (E.D.N.Y. 2004) (claims that the plaintiff was denied a hearing with respect to determining the amount of child support due and that "she was not given notice that her vehicle would be seized due to her failure to pay child support" were barred by <u>Rooker-Feldman</u> doctrine because they were "inextricably intertwined with the state court's determinations [with respect to child support] that could have been raised in state court, either in the Family Court or on appeal").  To the extent that the plaintiff's suit is based on the state court's order holding him in contempt, his claims are dismissed.  Furthermore, issues "necessarily decided by the state court" in the child support proceedings are also barred.  <u>Cogswell</u>, 304 F.Supp.2d at 356.

### G.  Claims Arising out of Incarceration for Contempt

The State Defendants correctly argue that to the extent that the plaintiff's claims arise out of his incarceration for contempt, they should be dismissed.  The Supreme Court stated in <u>Heck v. Humphrey</u>:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

11

512 U.S. 477, 486-87 (1994). Therefore, any cause of action which would "necessarily imply the invalidity of [plaintiff's] conviction or sentence" must be dismissed unless the plaintiff can show "that the conviction or sentence has already been invalidated." Id. at 487.

### H. Failure to Make Proper Service

The State Defendants also argue that the case should be dismissed as to them for failure to make proper service. The plaintiff must serve each defendant in compliance with Fed. R. Civ. P. 4(e), which provides for service under clause (2) or service pursuant to Connecticut rules for service. Fed. R. Civ. P. 4(e)(2) provides that service can be made:

> by delivering a copy of the summons and complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place or abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). The Connecticut rules provide for service "by leaving a true and attested copy of [process], including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a). The receipts for service of process docketed in this case show that service was made on another assistant attorney general for both defendants Nagy and Syzdlowski. For defendant Julian, service was made on an office manager. Because the individuals

12

served were not authorized agents of these defendants, the plaintiff has not made proper service.

### I.    Defendant Margaret Hollon

The court notes that it has dismissed defendant Margaret Hollon as a defendant in this action in an order dated June 16, 2007 (Doc. No. 41) because she is not a proper defendant in this case.

### J.    Defendant Carol Mulready

Although Carol Mulready has not filed a motion to dismiss, the plaintiff has not alleged facts to show that Carol Mulready is a "state actor" as required by Section 1983, and the claims against her should be dismissed.

### III. <u>CONCLUSION</u>

For the reasons set forth above, the State Defendants' Motion to Dismiss (Doc. No. 29) is hereby GRANTED.  The Clerk shall close this case.

It is so ordered.

Dated this 19th day of June 2007 at Hartford, Connecticut.


                                  /s/AWT
                            Alvin W. Thompson
                            United States District Judge